ALLEN, Acting Chief Judge.
Appellant, defendant below, was informed against, tried and convicted of obtaining. property by means of making, uttering and delivering a worthless check. He was sentenced to a term of six months- *697 to three year.} imprisonment. The facts underlying the conviction are as follow:
On November 6, 1962, the appellant gave Mrs. Bonita Grimes a check in the amount of $483, receiving in exchange a check in :the amount of $333 from Mrs. Grimes. {The $150 difference represented a gratuity from appellant to Mrs. Grimes.) The appellant’s check was drawn on a bank in Pennsylvania and was subsequently returned to Mrs. Grimes not honored because the account had been closed. Apprised of the fact that the check had been returned, appellant, on November 21, 1962, gave Mrs. Grimes a check for the same amount, $483, drawn on a bank in Tampa, Florida. This check was dishonored and returned because of insufficient funds and is the check upon which the prosecution and conviction were based.
Appellant argues that he obtained nothing of value in return for his check of November 21, 1962, and that he was, at most, liable for prosecution for violation of Fla. Stat. § 832.05(2), F.S.A. (uttering, issuing or delivering a worthless check) rather than Fla.Stat. § 832.05(3), F.S.A. (obtaining services, goods, wares or things of value by means of a worthless check). In support of this argument appellant cites, inter alia, Harris v. State, Fla.App. 1960, 123 So.2d 752, modified on cert. Fla., 136 So.2d 633, 91 A.L.R.2d 1088 and Helms v. State, Fla.App.1961, 128 So.2d 756. In each of these cases conviction for violation of Fla.Stat. § 832.05(3), F.S.A., was reversed when the evidence indicated that the check was delivered in satisfaction of a pre-exist-ing obligation. In neither case did the existing obligation arise from an earlier dishonored check.
In response to appellant’s contention the State argues that the delivery of successive worthless checks constituted a single transaction and that the check of November 21 was merely substituted for the November 6 check used to obtain the money from Mrs. Grimes. The State cites, as persuasive, the decision of the Supreme Court of Tennessee in Williams v. State, 1955, 198 Tenn. 439, 281 S.W.2d 41.
In Williams v. State the defendant had given the prosecuting witness successive worthless checks in payment for certain coal. In a prosecution based on the second check, defendant was convicted of violation of a Tennessee Code provision, Section 11157, which provided:
“ ‘Any person who shall obtain, with fraudulent intent, money, or other property which may be the subject of larceny, or who shall obtain credit with like intent, by means of a check, draft, or order, of which he is the maker or drawer, which is not paid by the drawee, shall be guilty * * * ’.”
Affirming the conviction the Tennessee Supreme Court alluded to evidence that defendant had, throughout the course of his transaction's with the prosecuting witness, consistently intended to “beat” him with respect to the amount due. Apparently relying on this factor, the court held that the successive checks constituted a single transaction whereby something of value was obtained. The court, however, did not rely entirely on this theory but found additional support in an earlier Tennessee case, State v. Nelson, 1953, 195 Tenn. 441, 260 S.W.2d 170.
Tire Nelson case, like the Williams case involved prosecution under Section 11157 of the Tennessee Code. In that case the defendant had given a worthless check in return for release of a labor and materials lien. By reference to Section 10936 of Tennessee’s Code whereby releases or instruments in writing which created rights or obligations were made subjects of larceny, the court found the facts, to be within the purview of Section 11157. By referring to the Nelson case, the court which decided Williams v. State apparently viewed the first worthless check there involved as an instrument in writing which created rights or obligations.
Unlike the facts in the Williams case, the case sub judice does not involve evidence *698 of the appellant’s continuing intent, by-means of successive checks, to defraud the prosecuting witness. Because of this distinction, appellant argues that the “single transaction” theory is inapplicable.
Unlike the Tennessee Code, Fla.Stat. § 832.05(3), F.S.A., does not expressly designate “ ‘property which may be the subject of larceny’ ” as an object, the obtaining of which by means of a bad check constitutes a violation of the law. The Florida Statute designates “thing of value.” Accordingly, the second theory of the Williams case is not strictly applicable. However, the essential result of the application of statutory language in Williams, whereby a violation of law was found in obtaining one bad check by means of another, was also reached in a jurisdiction where the Statute, like Fla.Stat. § 832.05, F.S.A., expressly designated “thing of value” as an object of swindling by means of worthless check.
In Parrot v. State, 1928, 109 Tex.Cr.R. 375, 5 S.W.2d 156, the defendant-appellant had been convicted of obtaining a thing of value by means of a worthless check. The circumstances giving rise to conviction involved defendant having given Arriola a worthless check. Arriola endorsed the check and gave it to Rich, who endorsed and deposited the check. When the check was dishonored the defendant gave Rich a second check and received the first one in return. Prosecuted for issuing the second check, the defendant was convicted and appealed. Although the conviction was reversed on other grounds, the court rejected defendant’s argument that he had received nothing of value for his second check. The Court said, “It seems plain that an endorsed check might be a ‘thing of value,’ as those words are used in [the Texas Penal Code].”
Admittedly the ultimate result in the Parrot case makes the aforequoted portion of the opinion “mere dictum.” Admittedly too, the factor of the third party endorsement materially affects the conclusion that the check was plainly a “thing of value.” Nonetheless, the Parrot case, like the Williams case, is a significant instance of the disposition of a problem essentially similar to that here presented.
Turning to the facts of the instant case, the apparent contradiction in the suggestion that a worthless check might be a thing of value vanishes upon analysis. As is apparent in the facts of the instant case the first check was considered of sufficient value to the defendant to justify redeeming it with an ostensively valid check for $483. As obviously the prosecuting witness deemed it of enough value to relinquish possession only upon receiving another check. Considered in terms of its value as evidence of debt in Mrs. Grimes’ possession and as evidence of a crime out of the appellant’s possession, its value is manifest. It is this value in the check itself, and the fact that the second check was the means-by which Mrs. Grimes was induced to part with the first check which distinguishes the instant case from the Harris and Helms-cases relied upon by appellant. In the Helms case the court spoke of the distinction between Fla.Stats. § 832.05(2) and § 832.05(3), F.S.A., in terms of the element of “inducement” to part with a “thing of value” in § 832.05(3) absent in § 832.05(2). That the check of November 21 was an “inducement” is apparent in the evidence in the instant case.
The evidence indicating that appellant, by delivery of the worthless check of November 21, induced Mrs. Grimes to part with the evidence of debt and of crime represented by the earlier check, suffices to sustain the conviction for violation of the provision of Fla.Stat. § 832.05(3), F.S.A.
Affirmed.
SHANNON, J., and McDONALD, PARKER LEE, Associate Judge, concur.